# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

CLYDE CALLOWAY, )
 )
   *Plaintiff*, )
 )
v. ) Case No. CIV-19-992-D
 )
 )
KIRKLAND'S STORES, INC., )
 )
   *Defendant*. )

## ORDER

Before the Court is Defendant Kirkland's Stores, Inc.'s Motion for Summary Judgment and Supporting Brief [Doc. No. 28]. Plaintiff filed a Response [Doc. No. 31], to which Defendant replied [Doc. No. 36].

## BACKGROUND

This is a premises liability case stemming from an incident that occurred in October 2017. Clyde Calloway was shopping in Kirkland's Stores, Inc.'s Belle Isle location in Oklahoma City, Oklahoma. While shopping, Calloway picked up a painting. While holding the painting, Calloway tripped over a mirror and fell in the store. Calloway suffered injuries from the incident. *See* Orig. Pet. [Doc. No. 1-1 at 1].

Calloway filed suit in state court on September 26, 2019, and the case was removed to this Court on October 30, 2019. *See* Notice of Removal [Doc. No. 1]; Orig. Pet. [Doc. No. 1-1 at 1]. Plaintiff contends that Defendant negligently placed the mirror in the walkway or allowed it to be placed there. *Id.*

Defendant filed the instant motion for summary judgment [Doc. No. 28], asserting that it is not liable because it did not have actual or constructive notice of the location of the mirror before the incident. Further, Defendant contends that Calloway's negligence caused the fall because he was holding the painting when he tripped.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties

present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**UNDISPUTED FACTS**

In October 2017, Plaintiff was an invitee at a Kirkland's store in Belle Isle in Oklahoma City with his daughter and son-in-law. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 1. Plaintiff shopped in the store for an hour or longer. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 2. While in the store, Plaintiff picked up a painting to show his daughter. *Id.* Plaintiff ultimately set the painting down and continued shopping. *Id.* About twenty minutes later, Plaintiff changed his mind and decided he wanted the painting. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 3. Plaintiff walked over to the painting and picked it up. *Id.* While holding the painting, Plaintiff caught his foot on something and fell. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 4. No witnesses saw Plaintiff's fall. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 6. After the fall, Plaintiff stood up and went to the front of the store to check out. Pl.'s Facts Precl. Summ. J. [Doc. No. 31] ¶ 10. After notifying the store manager of his fall, Plaintiff and his family members left the store. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 11.

Kirkland's store managers are required to inspect the sales floor throughout the day for out-of-place merchandise and potential tripping hazards. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 9.

**DISCUSSION**

Plaintiff seeks to hold Defendant liable on premises liability grounds. Under Oklahoma law, "[i]t is axiomatic that the mere fact that an injury occurs carries with it no

presumption of negligence." *Gillham v. Lake Country Raceway*, 2001 OK 41, ¶ 7, 24 P.3d 858. *See Martinez v. Angel Expl. LLC*, 798 F.3d 968, 973 (10th Cir. 2015) (applying Oklahoma law in a diversity case addressing premises liability). Plaintiff must establish three elements to prevail on a premises liability negligence claim: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by such breach." *Armer v. Golden Corral Corp.*, No. CIV-12-1351-M, 2014 WL 4500671, at *2 (W.D. Okla. Aug. 21, 2013). Defendant concedes that Plaintiff was an invitee, and Defendant owed Plaintiff a duty of ordinary care. *See* Def.'s Mot. [Doc. No. 28 at 8]. Defendant also concedes that Plaintiff suffered injury. *Id.* The only inquiry is whether Defendant breached its duty.

Regarding invitees, business owners owe a "duty to exercise ordinary care to keep [the] premises in a reasonably safe condition for use [by the] invitees and a duty to warn invitees of dangerous conditions upon premises that are either known or should reasonably be known by the owner." *Phelps v. Hotel Mgmt., Inc.*, 1996 OK 114, ¶ 6, 925 P.2d 891. The duty extending to invitees "applies to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like which are not known to the invitee and would not be observed by him in the exercise of ordinary care." *Southerland v. Wal-Mart Stores*, 1993 OK CIV APP 12, ¶ 4, 848 P.2d 68. A business owner's liability hinges on "the owner's superior knowledge of the danger." *Id.* As such, a business owner will not be responsible "unless it be shown that [it] had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its

4

presence." *Taylor v. Hynson*, 1993 OK 93, ¶ 16, 856 P.2d 278. The question is whether a defendant had (1) actual knowledge or (2) constructive knowledge of the condition.

Plaintiff has provided no evidence that Defendant had actual knowledge of the mirror at the time of the incident. *See also* Dep. of Pl. [Doc. No. 28-1], 70:24–71:3. Thus, the analysis turns to whether Defendant had constructive knowledge. Constructive knowledge will be imputed to a business owner if the condition "existed for such time [that] it was his duty to know of it, or if the condition was created by him, or by his employees acting within the scope of their employment." *Williams v. Safeway Stores, Inc.*, 1973 OK 119, ¶ 3, 515 P.2d 223.

## I. Length of Time

Defendant asserts that Plaintiff does not know how long the mirror had been on the floor in the walkway. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶ 7. Plaintiff concedes this in his response brief. *See* Pl.'s Resp. Br. [Doc. No. 15 at 15] ("Defendant is correct that we do not know precisely how the mirror came to be on the floor or how long it had been there."). The evidence indicates that Plaintiff was in the area just twenty minutes before the incident. Plaintiff picked up a painting and put it down before he continued shopping elsewhere in the store. When Plaintiff approached the area to retrieve the painting, he states that he came from a different direction. The facts indicate that Plaintiff approached the same painting, picked it up, turned to his right, and caught his foot on something. Def.'s Stmt. Undisp. Facts [Doc. No. 28] ¶¶ 3, 4.

Plaintiff does not set forth specific facts as to the length of time the mirror had been on the floor—or even that the mirror was on the floor. Plaintiff provides no facts about the

location of the mirror, the display, the setup of the area, or the pathway. Plaintiff has no photos of the area on the day in question.[1] Plaintiff conclusively asserts that "negligence on Kirkland's part is the 'most likely' cause" and "Defendant most probably created the hazard." Pl.'s Resp. Br. [Doc. No. 31 at 15]. It is also possible, however, that the mirror was misplaced by a customer in the twenty minute interval while Plaintiff was shopping in the store, or that Plaintiff accidentally misplaced the mirror when he was in the area the first time. It is noteworthy that Plaintiff testified his vision was blocked while he was holding the painting at the time of the incident. *See* Dep. of Pl. [Doc. No. 28-1], 52:24-53:11. Thus, it is also possible that the mirror could have been appropriately placed, but Plaintiff failed to see it because of his obstructed vision.

Under this evidence, "'a jury would have to speculate to conclude that the dangerous condition was present for a sufficient amount of time to impose constructive notice.'" *Ritch v. Carrabbas Italian Grill L.L.C.*, 719 F. App'x 838, 842 (10th Cir. 2018) (quoting *Lewis v. Dust Bowl Tulsa, LLC*, 377 P.3d 166, 174 (Okla. Civ. App. 2016)). Accordingly, "[s]uch speculation isn't sufficient to prove breach of a business owner's duty of care under Oklahoma law." *Ritch*, 719 F. App'x at 842.

## II. Stackout Method

Plaintiff next asserts that Defendant's "stackout" method should have put it on constructive notice of the condition. Plaintiff provides evidence that Kirkland's stores are unorganized and disheveled, and that items are often leaning against display cases and

---

[1] Plaintiff provided twenty-two photographs, but they were taken in November 2019—two years after the alleged incident. *See* [Doc. No. 31-6].

tables. *See* Pl.'s Facts Precl. Summ. J. [Doc. No. 31] ¶¶ 3–5. As such, Plaintiff contends Defendant should have reasonably anticipated that the stackout method would result in an incident. Pl.'s Resp. Br. [Doc. No. 31 at 17–18]. Plaintiff posits that Defendant "created an unreasonable hazard . . . that the mirror would fall or be knocked over, or misplaced by a customer." *Id.* at 17.

Plaintiff relies on *Lingerfelt v. Winn-Dixie Tex., Inc.*, 1982 OK 44, 645 P.2d 485 (1982). There, a woman fell on loose strawberries in a grocery store. *Id.* ¶ 2. The strawberries were usually wrapped in cellophane, but on the day of the incident, the strawberries were unwrapped because of a wrapping machine issue. *Id.* The Supreme Court of Oklahoma held that, "display[ing] goods in an unsafe or negligent manner invites liability on grounds [the business owner] had at least constructive notice of the dangerous condition." *Id.* ¶ 20. The Court opined that "[w]hen a shopper has shown that circumstances were such as to create the reasonable probability that a dangerous condition . . . would occur, the invitee need not also prove that the business proprietor had notice of the specific hazard . . . ." *Id.* Plaintiff asserts that the stackouts are a sufficiently dangerous condition to dispense with proving Defendant had constructive notice.

*Lingerfelt*, however, is distinguishable. There, multiple employees testified that they were aware that safety was a consideration in covering the strawberries. *Id.* ¶ 23. The store could have wrapped the strawberries in cellophane and secured them with a rubber band, but the area supervisor instructed the produce manager to display the strawberries "unwrapped and heaped up." *Id.* ¶ 26. The grocery store deviated from normal safety

7

practices designed to avoid spillage or accidents. Here, there is no evidence that Defendant deviated from its display protocols or safety measures.

Defendant has an operations manual, but Plaintiff contends that "[n]othing in Kirkland's hundreds of pages of written policy requires display safety inspections." Pl.'s Facts Precl. Summ. J. [Doc. No. 31] ¶ 15. Plaintiff attaches 11 pages of Kirkland's "230-page Operations Manual." *Id.* In three separate areas, the manual provides safety protocols:

- *See* [Doc. No. 31-9 at 9], "Preventative Guidelines – Stacked Items"
    - "Restack any merchandise that is leaning or may pose a tripping hazard."
- *See* [Doc. No. 31-9 at 10], *"*Merchandise Placement"
    - "Ensure displays are sturdy."
    - "Assist Customers with stacked framed art, mirrors, and metal."
    - "Do not overload stacks on the sales floor (8 to 10 pieces)."
- *See* [Doc. No. 31-9 at 10],"Tripping Hazards"
    - "Ensure merchandise does not create tripping hazards."
    - "Aisle ways are to remain clear."
    - "Ensure that the aisles maintain unimpeded 36 inch wheelchair access."

Plaintiff also attaches a 69-page "Visual Guide." *See* [Doc. No. 31-11]. This visual guide provides instructions for setting up displays in Defendant's stores. On most instruction pages, Kirkland's includes a "safety and maintenance" box providing for specific safety

tips related to each display. *See* [Doc. No. 31-11 at 18–21, 25–33, 35–42, 44–50, 52–55, 57–60, 65–66]. These boxes limit the number of items of art and mirrors that may be stacked per table; prescribe the use of extension bars for the art and mirror displays; provide for the control of traffic flow in the store; and mandate the use of cross bars, u-bars, and clamps to secure the art and mirrors.

In sum, Defendant has safety measures in place related to the art and mirror stackouts. Plaintiff provides no evidence that Defendant deviated from any of its safety measures. Plaintiff points to no evidence that there was even a stackout or mirror display in the relevant area. Of the sixty pages of display options permitted in a Kirkland's store, many displays do not even include art or mirrors. Plaintiff provided two-year old photographs that attempt to document the condition of the store on the day of the incident. Aside from conclusory statements, Plaintiff provides no evidence connecting a stackout to Plaintiff's fall.

### III. Failure to Inspect

Plaintiff contends that Defendant failed to properly inspect the store. For a failure to inspect claim, the plaintiff "must show the storekeeper negligently failed to inspect or maintain the premises, or did not use ordinary care in policing the premises." *Glover v. Montgomery Ward Co.*, 1974 OK CIV APP 33, ¶ 24, 436 P.2d 401. Plaintiff asserts that Defendant did not use ordinary care to check the aisles of the store frequently enough. The store's manager, Jeremy Davis, testified that he inspected the area within the hour before

the incident. Plaintiff takes issue with the credibility of Mr. Davis.[2] Plaintiff also asserts there is nothing in the training manual providing for regular store inspections.

Mr. Davis testified in his deposition that store managers were to conduct a "figure eight" every hour. *See* Dep. of Jeremy Davis [Doc. No. 36-4], 37:2–37:13. Later in his deposition, Mr. Davis testified that he conducted this inspection pattern in the morning and again in the evening. *Id.* at 166:10–166:16. Mr. Davis could not pinpoint this term in Defendant's operations manual. *Id.* at 37:14 – 38:3; *see also* 38:14–39:4.

In Defendant's operations manual, there are protocols for general safety inspections. First, the manual prescribes that the manager should post a daily action list with opening and closing routines. [Doc. No. 31-9 at 1]. Team members are to initial the routine when they complete an assigned task. *Id.* Second, the manager should print a "Daily Action List" each morning. *Id.* The actions on the list are "time sensitive and vary day to day based on the needs of the business." *Id.* These lists are to be kept in a filing cabinet in the manager's office for thirty days. *Id.* Third, team members are assigned a daily zone for which they are responsible during their shift. *Id.* at 2. Records of daily zones are kept for a pay period. *Id.* Finally, two hours before closing, team members perform "recovery" for their assigned sales zone, which involves restocking, replacing, and straightening items. *Id.* at 3. The summary judgment record is devoid of support that these measures were performed.

---

[2] Plaintiff asserts that because Davis does not remember the exact date of the incident, his testimony that he inspected the area before the incident should be discredited. Plaintiff also asserts that there is a dispute as to whether Mr. Davis went back to the scene of the incident after the incident occurred. These assertions are not material to the only remaining issue—whether the store failed to inspect the area before the incident.

In addition to the policies outlined in the operations manual, and the visual pamphlet discussed in the previous section, Plaintiff also attaches Defendant's safety posters. These posters provide similar instructions—keep the aisles clear, maintain clear walkways, and limit the art stacks to eight to ten items. [3] The posters use general terminology like "check regularly" and "maintain the walkways" and "keep the walkways clear," but it is unclear how frequently Defendant's employees were to perform these tasks. Based on Mr. Davis's testimony, the operations manual, the Visual Guide, and the posters, a genuine dispute exists as to the frequency of store inspections. From Mr. Davis's testimony, reasonable minds could differ as to whether—or how frequently—the figure-eight inspections were conducted. Additionally, reasonable minds could differ as to whether the operations manual, Visual Guide, and safety posters sufficiently provided for how frequently the store inspections were to occur. "Where reasonable minds may differ in their inferences and conclusions therefrom, the question . . . should be left to the jury." *J.C. Penney Co. v. Barrientez*, 1965 OK 166, ¶ 15, 411 P.2d 841, 849. Thus, Defendant is not entitled to judgment as a matter of law on Plaintiff's claim of negligent failure to inspect.

---

[3] *See* [Doc. No. 31-12], "Let's Step Up Safety on the Sales Floor" ("Check regularly to make sure product is placed properly on fixtures and will not fall off. . . Build stable stack outs and when product gets moved, put it back in place . . . Maintain 36" walkways. Merchandise that juts out could cause a fall. . . Maintain Visual Standards in art at all times . . . Offer to help Customers handle art . . . Keep aisles and walkways free of clutter so that people can move easily."). *See also* [Doc. No. 31-13], "Make it Easy to Shop – Merchandise Safety" ("Ensure aisles have 36" of clearance to prevent trips and allow shopping space for our customers . . . Limit wall art/mirror stacks to 8-10 items; fewer for heavier items."); [Doc. No. 31-14] "Let's Build Safety from the Ground Up" ("Take pride in a tidy, easy-to-shop store. . . Straighten displays as you walk the store . . . If product is protruding into the aisle, move it so that it is sitting securely on the fixture.").

## CONCLUSION

For these reasons, the Court finds that Defendant is entitled to a determination as a matter of law that the mirror had not been on the floor for a sufficient length of time so as to put Defendant on constructive notice of a dangerous condition. Defendant is also entitled to a determination as a matter of law that the stackout displays do not suffice to put Defendant on constructive notice of the condition. Summary judgment is not appropriate on any other issue addressed by the Motion.

**IT IS THEREFORE ORDERED** Defendant's Motion for Summary Judgment [Doc. No. 28] is **GRANTED** in part and **DENIED** in part as set forth herein. Whether Defendant failed to properly inspect the involved area remains for trial.

**IT IS SO ORDERED** this 12th day of June, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge